# UNITED STATES DISTRICT COURT

**FILED**
NOV 2 9 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

_____NORTHERN_____ DISTRICT OF ___ILLINOIS, EASTERN DIVISION___

UNITED STATES OF AMERICA

v.

FRANCISCO ROSALES, and
ISRAEL GONZALEZ.

CRIMINAL COMPLAINT

CASE NUMBER: 05CR 959
MAGISTRATE JUDGE SCHENKIER

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning in or about November 13, 2005, and continuing until on or about November 28, 2005, in the _____Northern_____ District of ___Illinois,___ defendants did,

conspire with each other and others knowingly and intentionally to possess with the intent to distribute and to distribute a controlled substance, namely, in excess of 5 kilograms of cocaine, a Schedule II Controlled substance.

in violation of Title ___21___ United States Code, Section(s) ___846___.

I further state that I am a(n) ___Special Agent, Drug Enforcement Administration___ and that this complaint is based on the following facts:
*Official Title*

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof: __X__ Yes ____ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

___November 29, 2005___          at  ___Chicago, Illinois___
Date                                                City and State

_____
Signature of Judicial Officer

Sidney I. Schenkier, United States Magistrate Judge
Name & Title of Judicial Officer

STATE OF ILLINOIS      )
                       )   SS
COUNTY OF COOK         )

## AFFIDAVIT

I, Garrett Malloy, being duly sworn on oath, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration and have been so employed for approximately 2 years. I have received training in narcotics organizations and their structure, the use of confidential informants, operating as an undercover agent, and other investigative techniques.

2. This affidavit is based on my personal knowledge and on information from other federal, state, and local law enforcement personnel. This affidavit is being submitted in support of a criminal complaint against FRANCISCO ROSALES and ISRAEL GONZALEZ. I have not included every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause to believe that ROSALES and GONZALEZ committed the offense set forth in the attached complaint.

3. On November 13, 2005, DEA agents developed a plan to purchase drugs from an individual known as Francisco ROSALES, who had been identified through a cooperating source ("CS") as a source of cocaine. In order to execute this plan, the CS agreed to negotiate a controlled purchase of cocaine from ROSALES. A brief meeting was held at a parking lot in Westmont, Illinois in the early afternoon of November 13, 2005, between the CS, ROSALES, and GONZALEZ. During this meeting, the CS, ROSALES, and GONZALEZ discussed whether they had "work", and GONZALEZ wrote down the telephone number of the CS for future negotiations.

4. On or about the afternoon of November 14, 2005, the CS placed a series of controlled calls to ROSALES to arrange the transaction. The CS told ROSALES to meet on November 15, 2005 at approximately 4:00 p.m. at the Burger King restaurant on 63rd Street in Westmont, Illinois. ROSALES responded that he agreed to this plan. This and many of the subsequent conversations were conducted in code.

5. At or about 4:15 p.m. on November 15, 2005, the CS arrived at the Burger King restaurant in Westmont, Illinois. After arriving at and entering the Burger King restaurant, the CS made contact with ROSALES, who was accompanied by GONZALEZ. The CS was under constant surveillance during the course of the meeting at Burger King. The subsequent conversations between ROSALES, GONZALEZ, and the CS were recorded by a hidden device worn by the CS and were inventoried as evidence.

6. During these conversations, ROSALES indicated that he could supply the CS with approximately 11 kilograms of cocaine and began to haggle with the CS on the pricing for the cocaine. ROSALES and the CS ultimately agreed to a price of $19,300 per kilogram for a subsequent purchase of 11 kilograms of cocaine. ROSALES and the CS agreed to conduct the transaction on November 16, 2005 in the area of Woodridge, Illinois. GONZALEZ was present throughout the course of these negotiations and conducted counter-surveillance throughout the meeting.

7. Between 9:00 a.m. and 11:00 a.m. on November 16, 2005, the CS left a series of voice mail messages with ROSALES regarding the meet time and location for the agreed transaction. At approximately 11:00 a.m., ROSALES returned the calls of the CS and stated that ROSALES would be ready to conduct the transaction within the hour. Under DEA surveillance, ROSALES and

GONZALEZ drove together in a white Buick to a parking lot in Downers Grove, Illinois where they met with Individual A, who was driving a white Dodge Intrepid. After approximately five minutes, ROSALES and GONZALEZ returned in the white Buick to an apartment at 2524 Waterbury Street in Woodridge, Illinois. During this return trip, ROSALES placed a call to the CS and stated that ROSALES was unable to provide the agreed 11 kilograms of cocaine but could provide 1 kilogram that day. The CS, accompanied by an undercover agent ("UC"), declined the 1 kilogram deal and agreed to proceed at a future date with at least a 6 kilogram transaction. ROSALES agreed to proceed with this new deal on November 18, 2005. The conversations between the CS and ROSALES were recorded and inventoried as evidence.

8. At or about 9:45 a.m. on November 18, 2005, ROSALES placed a telephone call to the CS and requested a meeting at approximately 10:00 a.m. at the Burger King in Westmont. The CS agreed to attend this meeting. Prior to the meeting, the CS was searched and the search revealed no contraband. After arriving at and entering the Burger King restaurant, the CS made contact with ROSALES, who was accompanied by GONZALEZ. The CS was under constant surveillance during the course of the meeting at Burger King. The conversations between the CS and ROSALES were recorded and inventoried as evidence.

9. The CS began the meeting by inquiring whether ROSALES and GONZALEZ were serious and capable of completing the proposed 11 kilogram deal. GONZALEZ responded that the source of the cocaine hesitated to front 11 kilograms of cocaine. ROSALES stated that he needed additional time to negotiate with the source of the cocaine to procure the agreed upon 11 kilograms quantity. The CS stated that GONZALEZ and ROSALES should call the CS when they were prepared to proceed with the transaction.

10. A series of controlled calls were placed between the CS and ROSALES regarding the timing of the proposed transaction on November 18, 19, and 20, 2005. The CS indicated that he would be prepared to proceed with the transaction at a later date.

11. On or about Saturday, November 26, 2005, in the afternoon, the CS made a controlled call to ROSALES to find out whether ROSALES was prepared to proceed with the transaction. ROSALES indicated that he would contact his source and get back in touch with the CS at a later date. On or about the 9:45 p.m. that same day, ROSALES placed a call to the CS and advised the CS that ROSALES would be able to supply the CS with a couple of kilograms of cocaine. The two agreed to speak further on the next day, November 27, 2005.

12. At or about 10:00 a.m. on November 27, 2005, the CS called ROSALES to inquire on the available quantity of cocaine for the agreed transaction. ROSALES stated that ROSALES was in control of 3 kilograms of cocaine and that the transaction would occur at 8:30 a.m. on November 28, 2005 at the Burger King restaurant in Westmont, Illinois.

13. On or about 8:35 a.m. on November 28, 2005, ROSALES called the CS to inquire whether the transaction would proceed that day. ROSALES further stated that ROSALES was in control of the 3 kilograms of cocaine and that the transaction would have to take place that morning. The CS responded that the CS would be ready to complete the transaction at approximately 9:30 a.m. that day. The conversations between the CS and ROSALES were recorded and inventoried as evidence.

14. At approximately 9:20 a.m. on November 28, 2005, ROSALES placed a call to the CS. The CS advised ROSALES that the CS would call ROSALES right back. During the subsequent call, ROSALES instructed the CS to proceed to the White Hen convenience store at the

8300 block of Woodridge, and that from the White Hen ROSALES and the CS would proceed to an apartment building near the White Hen. The CS agreed. The conversations between the CS and ROSALES were recorded and inventoried as evidence.

15. Prior to the meeting, the CS was searched and the search revealed no contraband. At approximately 10:00 a.m., the UC dropped the CS off at the White Hen convenience store in Woodridge. Shortly thereafter, a white Buick approached with ROSALES, GONZALEZ, and Individual B inside. The CS walked up to the white Buick, ROSALES exited the vehicle, and the CS followed ROSALES across Janes Street to an apartment building at 2524 Spring Street. The CS and ROSALES entered Apartment 1004 of this building. ROSALES presented the CS with 3 kilograms of cocaine, and the CS visually inspected the 3 one-kilogram packages. The CS then requested to make a phone call to arrange for the delivery of the money, and provided the UC with the exact location of the apartment.

16. The UC then gave DEA agents a prearranged arrest signal indicating that the cocaine was present. DEA agents and Cook County narcotics unit officers proceeded to enter Apartment 1004 at 2524 Spring Street and arrested ROSALES. GONZALEZ and Individual B, both present inside the white Buick in the White Hen parking lot, also were arrested at this time.

17. The seized 3 kilograms of cocaine were subsequently field-tested. The results were positive for cocaine.

18. Based on the foregoing information, I believe that there is probable cause to believe that FRANCISCO ROSALES and ISRAEL GONZALEZ have violated Title 21, United States Code, Section 846.

GARRETT MALLOY
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 29th day of November, 2005.

SIDNEY I. SCHENKIER
United States Magistrate Judge